IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


**WILLIE F. BOSTON,**

    **Plaintiff,**

vs.                                                            **CASE NO. 5:04CV424-SPM/AK**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Act and supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are **not** supported by substantial evidence; thus, the decision of the Commissioner should be reversed and this cause remanded for payment of benefits.

A.   **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB and SSI on February 16, 2000, alleging a disability onset date of December 2, 1999, because of a pelvic fracture, back and leg pain, a blood condition, and borderline intellectual functioning.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing and entered an unfavorable decision on June 2, 2003.  The Appeals Council remanded the case for a second hearing, which was held on July 15, 2004, and on August 17, 2004, the ALJ again denied benefits.  On November 3, 2004, the Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

B.   **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff has post-traumatic arthritis, hypertension, and a history of low-average intelligence, which are severe, but do not meet or equal the Listing of Impairments, and that his mental limitations are only mildly limiting in his daily activities and social functioning, and moderately limiting in the areas of concentration, persistence, and pace**.**  (R. 16).  The ALJ thus found Plaintiff able to lift up to 20 pounds, stand or walk about six hours out of an eight hour day, sit about six hours out of an eight hour day, and to be able to balance, kneel, stoop, but never to climb, crawl or crouch.  He also found him limited to unskilled or slightly skilled work and no work that required more than minimal reading, writing or math.  (R. 16).  The ALJ found Plaintiff's

**No. 5:04cv424-SPM/AK**

allegations of pain to be unsupported by the medical record, and his own reported daily activities. The ALJ noted that the doctors examining his fractures all reported them to be fully healed and none of them suggested that he could not perform light or sedentary work. Thus, the ALJ found Plaintiff incapable of performing his past relevant work, which required heavy lifting, but he was able to perform a significant range of light and sedentary work and a number of jobs in the national economy such as bench assembler, cashier-checker, van or escort driver, chauffeur, and mounter-hand photo finisher.

## C.  ISSUES PRESENTED

Plaintiff argues that the ALJ erred in rejecting the psychological consultative examination findings that he had borderline intellectual functioning and was functionally illiterate and in substituting his own judgment about Plaintiff's mental abilities; and the ALJ posed an incomplete hypothetical to the vocational expert in that he included "very limited educational literacy," when the diagnosis of his mental condition was borderline intellectual functioning with marked limitations in his ability to understand, remember and carry out instructions.

The government responds that the ALJ may properly consider Plaintiff's ability to work and earn substantial income despite his intellectual deficits as proof his mental condition was not disabling. Further, the ALJ included Plaintiff's physical and mental limitations in a hypothetical to the expert based on the RFC of Dr. Koulisis, and the ALJ's finding that Plaintiff had a very limited educational literacy.

**No. 5:04cv424-SPM/AK**

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

D.     **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the

**No. 5:04cv424-SPM/AK**

Page 5 of 14

Commissioner's findings of fact, his conclusions of law are not presumed valid. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  <u>Id.</u> (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

**No. 5:04cv424-SPM/AK**

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**E.   SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Records from Flowers Hospital show that on December 2, 1999, Plaintiff was in a car accident and presented with an acetabular fracture, left side. (R. 233). He was fitted with a "compression plate" and was discharged on December 10, 1999. (R. 221-223). His recovery was complicated by an episode of "acute post viral biceps myositis," which was treated successfully. (R. 189).

His hip injury appeared to heal upon x-ray, with excellent range of motion, although he reported some numbness, which was expected to resolve. (R. 239). An x-

ray taken on May 31, 2002, showed "post surgical changes involving the left acetabulum," without explanation of the significance of these changes. (R. 269).

A consultative examination by Dr. Koulisis on February 12, 2003, found Plaintiff to have a normal range of motion on a variety of tests and to likely have post-traumatic arthritis, but that Plaintiff was capable of lifting up to 50 pounds, 20 pounds frequently; standing or walking two hours out of an eight hour day; sitting, upper arm use, and communication unlimited, with restrictions to using hazardous machinery, climbing, crouching or crawling. (R. 281-288).

Plaintiff himself describes his continued pain as sharp and very sensitive to touch on his left leg. (R. 147). Also, he says walking and sitting up is painful. (R. 147). On a scale from one to ten, his pain is a 10. (R. 156-157).

A consultative examination by Dr. Mary Tyll dated March 20, 2003, found Plaintiff to have "markedly depressed" scores on the WRAT, indicating that he could read and write at "the lowest elementary level." (R. 289-294). She found that he substituted known words for unfamiliar words based on recognition of the first letter. She was unable to administer the MMPI because it required an eighth grade reading level. (R. 290). His IQ scores were: Verbal 72; Performance 79; and Full Scale 74. She found his ability to understand abstract information to be "severely limited," his processing speed and ability to attend and concentrate to be "very impaired," and to exhibit a "markedly depressed" ability to retain new information. She found that the testing suggested that he was functioning the borderline range with "a markedly poor fund of

general knowledge, poor vocabulary, extreme limited ability to understand abstract concepts, short attention span, and markedly limited cognitive flexibility." (R. 291-292). She concluded that his pleasant and polite demeanor "probably facilitated good working relationships and rapport with customers in the feed store where he once worked." Her mental assessment of his ability to work found him markedly to extremely limited in his cognitive abilities, but able to interact appropriately with others.

A Physical Functional Capacity Assessment dated July 13, 2001, but without reference to any other medical records rated him at a medium exertional level. (R. 262-268).

### F.  SUMMARY OF THE ADMINISTRATIVE HEARING

The Appeals Council remanded this case to the ALJ in a decision dated August 19, 2003, to obtain vocational expert testimony and to give further consideration to his maximum residual functional capacity. (R. 90-91)

At his hearing upon remand held on July 15, 2004, Plaintiff testified that he was 52 years old at the time of the hearing. (R. 38). He had tried working as a van driver, but the smoking bothered him and it hurt to sit in the van while he waited on people. (R. 39-40). He explains that he had a car accident in 1999, and broke his left side. (R. 44). A plate was put in surgically and his left leg is "dead" from his hip to his knee. (R. 44). Extended sitting causes that leg to cramp and sometimes his left knee swells and hurts. (R. 45). He never knows when or where he will feel pain in his body and sometimes he can walk fine, some days he needs two walking sticks. (R. 47).

He could not read any of the letters he received from Social Security, his daughter read them for him, and at work he had "tickets" to read, but he said, "When you work as long as I have, I guess you memorize a lot of stuff." (R. 49).

The vocational expert was asked to identify sedentary or light unskilled work for a person with a "very limited educational literacy," and she responded with a number of jobs, including a bench assembler, chauffeur, and a cashier/checker at a fast food restaurant. (R. 55). She also responded that a person with a marked difficulty in understanding short simple instructions could not do any job. (R. 59).

**G.    DISCUSSION**

    a)    Consultative Examination

Plaintiff argues that the only evidence of his mental abilities is the consultative examination of Dr. Tyll who found him to be markedly limited in a number of cognitive areas. Since this is the only assessment of his mental abilities, Plaintiff argues that there is no support for the ALJ's finding that Plaintiff's mental abilities are not severe because he was able to work 20 years at a feed store. Further, Plaintiff argues that the ALJ has substituted his own opinion for that of the medical expert.

The Commissioner argues in response that the ALJ properly rejected Dr. Tyll's opinion because evidence of Plaintiff's work record and job duties show that he is able to perform unskilled work with his borderline intellectual functioning because he did it for 20 years.

The ALJ relies upon Plaintiff's earnings record showing that he had a significant work history, and Plaintiff's own testimony that he "is able to perform a variety of personal and household chores, use machines and tools at the workplace, drive and operate yard maintenance equipment." (R. 17). The undersigned has carefully reviewed the hearing transcript and can find only that Plaintiff admits to loading and unloading feed at his former job. (R. 42). He did not admit to using machines and tools at the work place, and when asked if he was required to "read tickets" he explained, "When you work as long as I have, I guess you memorize a lot of stuff...." (R. 49). Other than that he could not read. (R. 49). As Dr. Tyll noted, Plaintiff would assign familiar words to those he did not know based on recognition of the first letter. This "system" of identification would explain how he filled orders at a feed store without ever actually being able to read those orders. He also admits to mowing his own yard, but there is nothing in the record about the type of lawn mower he uses or a reference to any other "yard maintenance equipment." (R. 43). For all the evidence shows, Plaintiff used a push mower. Thus, there is not support in the record, as referenced by the ALJ, for his finding that Plaintiff's use of machinery, tools, and other equipment at his former job was inconsistent with an inability to understand simple instructions.

The sole evidence of record as to Plaintiff's mental abilities is the report of Dr. Mary Tyll, who obtained test results which show he is functionally illiterate with borderline intellectual functioning and in her opinion unable to retain new information, and markedly limited in understanding and carrying out short, simple instructions. The

**No. 5:04cv424-SPM/AK**

ALJ ignored this medical opinion to characterize Plaintiff's mental limitations as "very limited educational literacy." The Code of Federal Regulations list the various lower educational levels as: (1) illiteracy, defined as "if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name"; (2) marginal education, defined as "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs...generally...schooling at a 6th grade level or less"; and (3) limited education, defined as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person to do most of the more complex job duties...generally....a 7th grade through 11th grade level...." There is no category for "very limited educational literacy," and it was, therefore, error for the ALJ to find Plaintiff not disabled under the Medical-Vocational Guidelines since it is not an educational level recognized by the regulations and used in assessing persons under the guidelines.

Finally, since the only evidence of Plaintiff's educational and intellectual abilities are Dr. Tyll's report and Plaintiff's own testimony that he cannot read or write beyond his own name, thereby making him illiterate under the definitions set forth in the regulations, under the Medical-Vocational Guidelines, he is an individual closely approaching advanced age (age 50-54), illiterate, with previous work experience in the unskilled area, limited to light work, and he is disabled. 20 CFR Pt. 404, Subpt. P, App. 202.09.


      b)    <u>Hypothetical to the vocational expert</u>


**No. 5:04cv424-SPM/AK**

Plaintiff complains that the ALJ incorrectly assessed his mental limitations in the hypothetical posed to the vocational expert, and when the attorney posed the actual limitations, the expert responded that no jobs could be performed if he was unable to understand simple instructions.

At the fifth step of the evaluation process, the ALJ must determine whether a Claimant, based on his residual functional capacity, age, education and work experience, can adjust to other work in the national economy. 20 C.F.R. § 404.1520(a)(4). The ALJ may make this determination by reliance upon the Medical Vocational Guidelines or by utilizing the services of a vocational expert. Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004). The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level." Wolfe v. Chater, 86 F.3d at 1078, quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992). See also Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995). "It is only when the claimant can clearly do unlimited types of  work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted). Exclusive reliance upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities. Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990).

**No. 5:04cv424-SPM/AK**

When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her.  <u>Phillips</u>, 357 F.3d at 1240.  In order for the expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which includes all of Claimant's impairments.  <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999).

Claimant correctly contends that the hypothetical posed by the ALJ improperly characterized his mental abilities as "very limited educational literacy."  As set forth above, this is not a recognized category of educational levels under the Regulations.  Further, the evidence of record regarding Plaintiff's mental capacity is that set forth in the opinion and functional assessment of Dr. Tyll, which found Plaintiff to have marked difficulty in understanding and carrying out short, simple instructions. When Plaintiff's attorney posed this to the vocational expert at the hearing, she said that there would be no jobs available which Plaintiff could perform.  Thus, the undersigned is of the opinion that the record establishes that Plaintiff is disabled using the Medical-Vocational Guidelines, and the testimony of the vocational expert, when correctly posed the mental limitations set forth in the record, further establishes that there are no jobs which Plaintiff could perform.  Thus, there is no need for additional consideration by the ALJ, the matter should be remanded for payment of benefits.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **REVERSED**, and this case **REMANDED FOR PAYMENT OF BENEFITS**.

**No. 5:04cv424-SPM/AK**

At Gainesville, Florida, this 3rd day of March, 2006.


                **s/ A. KORNBLUM**
                **ALLAN KORNBLUM**
                **UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 5:04cv424-SPM/AK**